***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stephenson with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Employee-Plaintiff and Employer-Defendant on or about August 14, 2003.
3. The carrier liable on the risk is correctly named above.
4. Employee-Plaintiff's average weekly wage is $1,042.18, subject to wage verification.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 47-year-old male.
2. Plaintiff became employed by defendant-employer in January 1992. Defendant-employer is in the business of commercial kitchen equipment repair, and plaintiff was primarily a service technician.
3. Plaintiff has sustained a number of injuries to his back over the years. Plaintiff was working on a steamer at JW Cafe in 1996 when he sustained an injury to his back. Plaintiff treated with Dr. Marchese following his injury. He had a course of physical therapy and seemed to be improving until an incident wherein he slipped on some ice on or about February 7, 1997. After that time, Dr. Marchese obtained an MRI which showed a herniated disk with a free fragment. Dr. Marchese performed a lumbar laminectomy on March 7, 1997. Plaintiff has had chronic pain in his low back since March 7, 1997.
4. Plaintiff was involved in a motor vehicle accident on May 23, 1997, in which he sustained some low back and neck pain. Again, plaintiff had a course of physical therapy.
5. By July 23, 1997, Dr. Marchese felt plaintiff had reached maximum medical improvement from his laminectomy. He assigned a 15% permanent partial disability rating to plaintiff's back. Plaintiff continued to treat with Dr. Marchese's office, as well as his family practitioner, Medical Arts Clinic, over the next few years. He continued to complain of back pain during that time, and was diagnosed with piriformis syndrome.
6. In July 2001, plaintiff was thrown from a horse. Plaintiff denied at the hearing that he sustained back pain as a result of that accident. However, based on the credible medical records, plaintiff complained of pain, including low back pain, following that accident. Plaintiff reported to Dr. Heneger in 2002 that his back pain was so severe he was having difficulty walking.
7. Plaintiff began treating with Dr. Sarzier on or about April 4, 2003. At that time he gave a history of back pain for several years getting progressively worse. He mentioned shooting pains in both hips, right worse than left. Dr. Sarzier obtained an MRI and recommended a diskogram that was never performed. The MRI revealed disk collapse at L5-S1.
8. In July 2003, plaintiff returned to the Medical Arts Clinic complaining of back pain.
9. Plaintiff testified that he sustained an injury by accident on or about August 14, 2003. Plaintiff testified he was attempting to change a vat on a fryer, and was using a socket wrench with a ratchet to take the drain valve off of the fryer. Plaintiff claimed this was different from his prior symptoms in that his complaints were primarily on his right side, a claim squarely contradicted by the more credible medical records.
10. Plaintiff did not seek any medical treatment on the date of his alleged injury, although he was asked by defendant-employer if he had any interest in doing so. Instead he went home and took pain pills for his complaints.
11. Plaintiff eventually sought treatment with Hart Industrial Clinic, which continued the same treatment plaintiff was receiving prior to August 14, 2003. Plaintiff was initially referred to Dr. Jeffrey Knapp for further evaluation. Plaintiff was unimpressed with the treatment rendered to him by Dr. Knapp. Per Dr. Knapp's records, plaintiff had simply flared up his prior injury.
12. Plaintiff redirected his own care to Dr. Sarzier. Plaintiff returned to Dr. Sarzier on December 11, 2003. Dr. Sarzier had been considering fusion surgery in April 2003, but Dr. Sarzier had postponed making a decision on the surgery pending the results of the discogram. Dr. McCloskey, who assumed plaintiff's care following Dr. Sarzier's relocation to Florida, confirmed that it is impossible to know, without having the discogram, whether plaintiff required the surgery as of April 2003. Dr. Sarzier ultimately performed the fusion.
13. On April 29, 2004, Dr. Sarzier had released plaintiff to horseback riding and given him a 50 pound lifting restriction. These were the same restrictions plaintiff possessed prior to his alleged injury.
14. Plaintiff returned to Dr. Sarzier on June 17, 2004 noting an aggravation of his condition after waxing floors. A straight leg raise test was negative at that time, which suggested plaintiff did not have a recurrent herniated disc. Plaintiff's condition has now deteriorated to the point that neither Dr. Sarzier nor Dr. McCloskey believe plaintiff is capable of working. At the time of plaintiff's most recent evaluation, on October 4, 2004, he had a positive straight leg raise test on the left side. Dr. McCloskey has referred plaintiff to a pain clinic for pain management.
15. Plaintiff suggested at hearing that his complaints had essentially resolved prior to August 13, 2003, or were at least manageable. This testimony is not accepted as credible in light of plaintiff's call to Dr. Hunt's office on August 13, 2003, the day before his alleged injury. Plaintiff had called on that date with complaints of increased pain, and wanted to come in for another injection. This was an option that was always available to plaintiff, even as far back as 1998. However, in the six and a half years that Dr. Hunt has been treating Plaintiff, the only time he called and asked to come in for an injection which was not previously scheduled was the day before his alleged injury at work.
16. Based upon the greater weight of the credible evidence, plaintiff has not proven that he sustained an injury by accident on August 14, 2003. Even assuming arguendo plaintiff's account of the alleged incident to be true, the evidence does not prove it was anything more involved than yet another temporary flare-up of plaintiff's pre-existing condition.
17. The greater weight of the evidence does not support a finding that plaintiff's herniated disc was causally related to the alleged incident of August 14, 2003.
18. The greater weight of the evidence does not support a finding that plaintiff's surgery was related to the alleged incident of August 14, 2003. The medical records show that the surgery had been considered as early as April 2003, and that plaintiff's problems predated the alleged injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove he sustained an injury by accident on or about August 14, 2003. Plaintiff failed to prove a material aggravation of a pre-existing condition on that date. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has failed to prove any disability stemming from the alleged incident of August 14, 2003. N.C. Gen. Stat. § 97-2(9).
3. Plaintiff has failed to prove that his subsequent medical treatment was related to the alleged incident of August 14, 2003. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Employee-Plaintiff's claim must under the law be, and is hereby, DENIED.
2. Each side shall pay its own costs.
This the 1st day of August, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER